Lovett Motor Co., et al. *v.* Walley.

Apr. 27, 1953

No. 38675          29 Adv. S. 10          64 So. 2d 370

*E. C. Fishel, R. C. Bradley* and *M. M. Roberts,* for appellants.

*Melvin, Melvin & Melvin,* for appellee.

LOTTERHOS, J.

Appellee, Hubert G. Walley, brought this suit in the Circuit Court of Perry County against Arthur K. Lovett and Mary Lillian Lovett, composing the partnership of Lovett Motor Company, doing business in Richton, and against Bodie D. Palmer, for damages resulting from a collision between an automobile driven by said Palmer and an automobile driven by appellee, in which collision appellee suffered serious and extensive personal injuries.

The collision occurred about 5 or 5:30 o'clock on Sunday afternoon, July 8, 1951, on Highway 15 about seven or eight miles north of Richton in Perry County. Appellee, accompanied by his wife, was driving north on said highway. The defendant Palmer, employed as a car salesman by Lovett Motor Company, and being the sole occupant of an automobile belonging to Lovett Motor Company, was driving south on said highway.

The declaration was in two counts. The first count charged that Bodie D. Palmer, as the servant and employee of Lovett Motor Company, acting within the scope of his employment, was guilty of negligence causing the injuries, in that he was operating the automobile in which he was riding at a highly dangerous, reckless, and excessive rate of speed and on the wrong side of the road.

The second count charged that the Lovetts were guilty of negligence causing the injuries in that they entrusted the automobile to the said Palmer, knowing, or under such circumstances as that they should have known, that he was a reckless driver because of his habits of drink, and was likely to drive the automobile while under the influence of intoxicating liquor, resulting in injuries to others, and that on the occasion in question he was driving said automobile while under the influence of intoxicating liquor and negligently collided with the automobile of the appellee.

The defendants answered, denying the charges of negligence, and the defendants Arthur K. Lovett and Mary Lillian Lovett pleaded as an affirmative defense that at the time of the collision said Bodie D. Palmer was not acting within the scope of his employment, and was not on his masters' business, but on a private or personal mission of his own, and further that they neither knew nor had reason to believe that he was addicted to the habitual use of intoxicating liquor, and was likely to drive the automobile while under the influence of intoxicating liquor, but that on the contrary, he was a competent and capable driver and known to them to be such.

The issues thus presented were, first, whether the collision was the result of Palmer's negligence; second, whether at the time of the collision Palmer was acting within the scope of his employment and on his masters' business; and, third, whether the injuries resulted from the negligence of the Lovetts, as Lovett Motor Company, in entrusting the automobile to said Palmer when they knew or should have known that he was a reckless driver due to his habits of drink, and was likely to drive the automobile while under the influence of intoxicating liquor to the injury of others.

At the conclusion of the evidence, peremptory instructions were requested by each of the defendants and were refused, and the case was submitted to the jury under instructions which embodied the aforesaid issues and re-

sulted in a verdict and judgment for the plaintiff in the sum of $4,000.00, from which the defendants appealed, and the plaintiff prosecuted a cross-appeal upon the ground of claimed inadequacy in the amount of the verdict.

It is not seriously urged on this appeal that the evidence was insufficient to create an issue of fact for the jury on the question of the negligence vel non of the defendant Palmer. Each driver contended that the other was driving on the wrong side of the road and thus caused the collision, and wholly conflicting evidence was introduced in support of these respective contentions. The jury resolved this conflict in the evidence in favor of the plaintiff, and there is ample evidence to support the jury's verdict on this issue.

It is contended by appellants, however, that on the occasion of the collision said Palmer was on a private or personal mission of his own and was not acting within the scope of his employment, and that, therefore, no liability for his negligent acts can be imposed upon Lovett Motor Company. The principles applicable to this contention were early announced by this Court in the case of Barmore v. Vicksburg S. & P. Ry. Co., 85 Miss. 426, 38 So. 210, as follows:

1. Where the relationship of master and servant is shown to exist, it devolves upon the master, in order to escape liability for the acts of the servant, to prove that the servant had abandoned the duties of his employment and had gone about some purpose of his own, in which the master's business was not concerned and which was not incident to the employment for which the servant was hired.

2. The general rule is that the master is excused from liability for the tortious act of the servant when committed outside the scope of the servant's employment, and this rule governs in all cases where the servant abandons his master's business and engages in some purpose of his own.

3. In determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master but whether he was at the time doing any act in furtherance of his master's business.

4. The question as to whether or not the servant in the particular instance was acting within the scope of his employment is a question of law for the court if there is no conflict in the facts, but if there is conflict in the facts then it is a question to be submitted to the jury.

These principles have been consistently applied by this Court. Shell Petroleum Corp., et al. v. Kennedy, 167 Miss. 305, 141 So. 335; Bourgeois v. Miss. School Supply Company, 170 Miss. 310, 155 So. 209; Stovall v. Jepsen, 195 Miss. 115, 13 So. 2d 229; Kramer Service, Inc. v. Robinson, 201 Miss. 805, 29 So. 2d 456; Miss. Power and Light Company v. Lembo, 202 Miss. 532, 32 So. 2d 573.

Applying these well established principles to the case at bar, we have no difficulty in concluding that on the occasion of the collision said Palmer was pursuing a private or personal mission of his own and was not acting within the scope of his employment and in furtherance of his masters' business. There is no material dispute in the evidence on this issue. The uncontradicted proof is that said Palmer was employed as a salesman by Lovett Motor Company; that in the performance of his duties he was permitted to drive one of the automobiles of Lovett Motor Company, and authorized to use it while in the performance of his duties as salesman; and that the place of business of Lovett Motor Company regularly closed at six o'clock in the evening and if it happened that Palmer, while at work for his employers, was delayed in returning the automobile to the place of business before closing time, he was authorized to drive the automobile to his home and keep it there overnight and return it to the place of business the next morning.

He had no **authority whatever** to use the automobile on a private or personal mission of his own. On Saturday night, prior to the collision, he left Richton about 9:30 o'clock and drove to Jones County where he visited friends whom he had visited on previous occasions. The collision occurred when he was returning home the next afternoon. His trip was a personal mission and had no connection whatever with the business of his employers. His employers had no knowledge that he was using the automobile on this occasion and had no knowledge that he had ever on any other occasion used it on personal missions. Palmer himself testified that during the four and a half or five years that he had worked for Lovett Motor Company he had used an automobile of the company on personal missions some three or four times but without the knowledge or consent of his employers. There is no testimony that materially contradicts this evidence.

It is argued, however, that the testimony of the witness Ollie Palmer is sufficient to show that appellant Bodie D. Palmer was acting in furtherance of the business of his employers on the occasion in question. It appeared from the testimony of this witness that said appellant stopped by the Blodgett Drive-In on the afternoon of the day on which the collision later occurred; that said Ollie Palmer, who operated the Blodgett Drive-In, had on a previous occasion discussed both with Bodie D. Palmer and appellant Arthur K. Lovett the matter of trading for an automobile; and that on this occasion, Bodie D. Palmer purchased some Coca Colas at the Blodgett Drive-In and there saw Ollie Palmer, and remarked to him that he thought he had a car which Ollie Palmer wanted, and that said Ollie Palmer might come by at any time and look at it. Nothing more was said or mentioned relative to a trade or sale of cars. We do not think that this evidence is sufficient to convert the personal mission on which Bodie D. Palmer was then engaged into a mission in furtherance of the business

of said Bodie D. Palmer's employers. The remark of Bodie D. Palmer to Ollie Palmer was nothing more than a passing remark or a collateral incident. S. & W. Construction Co. v. Bugge, 194 Miss. 822, 13 So. 2d 645. The testimony of the witness Ollie Palmer is insufficient in our opinion to constitute a contradiction of the positive testimony that on the occasion in question Bodie D. Palmer was on a personal mission of his own and was not acting within the scope of his employment and in furtherance of the business of his employers. We are, therefore, of the opinion that no liability is imposed upon Lovett Motor Company on the ground of negligence on the part of said Bodie D. Palmer while acting within the scope of his employment.

Appellants, Lovett Motor Company, further contend that the evidence is insufficient to impose liability upon them on the ground that they entrusted the automobile to Bodie D. Palmer, knowing, or under such circumstances as that they should have known, that he was a reckless driver due to his habits of drink and was likely to drive the automobile while under the influence of liquor to the injury of others; and that he was driving the same on the occasion in question while under the influence of intoxicating liquor and thereby caused appellee's injuries.

On the latter proposition the evidence was sharply conflicting. The jury found therefrom that he was under the influence of intoxicating liquor at the time of the accident, which finding controls in consideration of this appeal.

The facts shown of record on the question whether Palmer was a reckless and dangerous driver because of his drinking habits and whether Lovett Motor Company was chargeable with knowledge thereof are as follows: Appellant, Arthur K. Lovett, knew that Bodie D. Palmer would occasionally drink; and he, Lovett, had taken a drink with Palmer shortly after his employment, on an occasion when both were in attendance at a salesmen's

meeting in New Orleans. Lovett had never known Palmer to drink while in the performance of the duties of his employment and had always found him to be a safe and careful driver. Two witnesses for appellee testified that Palmer's reputation for drinking was bad. Two witnesses for appellants stated that his reputation for sobriety was good.

In determining whether this evidence made an issue for the jury on this phase of the case, we must first review and appraise our prior decisions in similar cases. This, we will now undertake to do.

This Court has in several cases followed and quoted the rule laid down in A. L. I. Restatement, Torts, Sec. 390, in this language: ██ ██ "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them."

The first case in which the doctrine was applied, decided prior to the Restatement, was Anderson v. Daniel, 136 Miss. 456, 101 So. 498. Judgment for the plaintiff was affirmed. Plaintiff's injury was caused by the negligent driving of appellant's sixteen year old son. Appellee's theory was that "appellant, knowing that his son was a reckless driver and was in the habit of using his car, became responsible for his act because he permitted him to use the car." This Court stated the rule in these words: "When an automobile is driven by a minor child of the owner with the latter's knowledge or permission, and such child is a reckless driver, and by reason thereof injures another, and his incompetency is known to the parent, the latter is liable upon the ground of negligently permitting his child to operate the car."

The Court found the evidence "sufficient to go to the jury on the question whether appellant knew that his son was in the habit of driving his car, and also on the question whether appellant knew that his son was a reckless driver."

The next case, Herrman v. Maley, 159 Miss. 538, 132 So. 542, was also decided prior to the Restatement. There was a judgment for the defendants, but it was reversed. Appellant's injury was caused by the negligent driving of appellees' seventeen year old son. The declaration, in the second count, sought to hold appellees liable "upon the ground of Richard Maley's negligence, in conjunction with appellees' negligence in permitting their son, Richard, a minor, to drive their car knowing that he was a reckless and dangerous driver." The appellees' position was that "conceding that their son was a reckless and dangerous driver, known to them to be such, nevertheless, they are not liable for appellant's injury, because at the particular time of the accident their son was using the car contrary to their request." The Court stated the rule as follows: "When an automobile is driven by a minor child with the permission of its parents, and such child is a reckless driver, and by reason thereof injures another, and his incompetency is known to the parents, the latter are liable for the injury upon the ground of negligently permitting the child to operate the car." The Court then added that parents must suffer the consequences of permitting their minor children "to drive an automobile when they know, or with reasonable care should have known, of their incompetency."

Although there was reputation evidence in both of the cases discussed above, to the effect that the son had a reputation as a reckless and dangerous driver, in the neighborhood or community where he and his parents lived, yet there was also direct evidence of facts tending to charge the parents with knowledge. In the Anderson case it was shown that the son was in fact a reckless driver; and in the Herrman case it was shown that the

son was in fact a reckless and dangerous driver, and that for that reason the parents' liability insurance had been cancelled. The parents of Maley testified that they had forbidden him to drive on account of prior accidents.

We now come to Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318, the first case applying the rule in an instance where a car is entrusted to a driver who is incompetent by reason of his drinking habits. The Court quoted and followed the above-mentioned text from the Restatement. There was a judgment for the plaintiff, which was affirmed. Plaintiff's injury was the result of the negligent operation of appellant's car by her adult son, who was shown to be drinking at the time. Although the appellant mother denied that she knew her son was a reckless driver and drank to excess, she admitted that she knew that she had paid a fine about a year before for her son on a charge of drunkenness, that she had called on the officers at one time to recover her car which had been taken away by her son for some days, that she knew her son had been adjudged a habitual drunkard and sent to Jackson for treatment, and that she knew he was drinking on the night of his marriage. Several witnesses testified that the general reputation of her son was that of a habitual drunkard or a person who was addicted to the use of intoxicating liquors. In answer to appellant's contention that even if she knew her son was a habitual drunkard it did not follow that therefore she knew him to be an incompetent driver, the Court quoted the Restatement, and then said that ''a person who has the general reputation of being an habitual drunkard is an incompetent driver, and that one who knows, or should know, facts which lead to the belief that one is an habitual drunkard should know that such person is just as unsafe a driver as an imbecile or a baby.'' This comment obviously went somewhat beyond the facts in the case, since the appellant knew that her son was a habitual drunkard, as is shown by the Court's

remark that "the mother's knowledge of this situation is too plain for any mistake to be made about it." It was not his reputation that made him a dangerous driver, but the fact of his habitual drunkenness. The Court said that "the owner is put on notice that one habitually addicted to the use of intoxicating drink is likely to have an accident occur. It is the duty of the master to see to it that the instrumentality which would be rendered dangerous in the hands of an incompetent is not placed in the hands of an habitual drunkard."

The next case for consideration is Levy v. McMullen, 169 Miss. 659, 152 So. 899. A judgment for the plaintiff was affirmed. The second count of the declaration charged that the employee of defendants "was frequently intoxicated on the streets, bore the reputation of being an habitual drunkard, and his said employers either knew, or by the exercise of due care should have known, that the said servant was in the habit of frequently getting drunk; nevertheless, that said employers had furnished him with an automobile to use at any time he desired, and while so using said automobile and while drunk" he negligently injured plaintiff. In deciding this case the Court stated that "the broad principle upon which this liability is founded is tersely and accurately stated as follows," and then quoted the already mentioned text from the Restatement on Torts. The Court then pointed out that the evidence showed that "the employers actually knew that the employee 'was occasionally a drinking man' "; that "while he did not get drunk in the daytime or while around the office of his employers, he did frequently get drunk in the evening and at night"; that "he was known to the police force of the community, and to others who testified, as an habitual drunkard"; and that "such was his general reputation." The Court then stated that "his employers had sufficient actual knowledge to put them upon inquiry which, if reasonably pursued, would have led to full

knowledge," and, further, that "the case comes squarely within the broad general principle above quoted."

We come next to Richton Tie & Timber Co. v. Smith, 210 Miss. 148, 48 So. 2d 618. A judgment for the plaintiffs was affirmed. The injury (to property) resulted from the negligence of one Charlie Johnson in the operation of a truck, which was held to have been entrusted to him by appellant. The case was based upon the rule now under consideration. Appellant maintained a pulpwood yard at Forest, in which community the accident occurred. The opinion states: "The undisputed proof is that Charlie Johnson was in the habit of getting drunk and operating a truck on the public highways in such condition, and that he was a reckless, incompetent driver, and that he had a general reputation in the community as a reckless, incompetent driver, and for driving while intoxicated." The Court stated that "appellant supplied the truck to Johnson under circumstances whereby it knew, or should have known, from his reputation that he was reckless and incompetent because of his habits of drunkenness," and then quoted again the rule as laid down in the Restatement. Although the Court said "from his reputation" at this point, the record in the Richton Tie Co. case shows that more than the reputation of Johnson was shown. The proof included the following facts: he had had other wrecks, he was an incompetent driver, he was fired once as a truck driver for being drunk, and he was "pretty bad to drink liquor."

All of the cases discussed above, when analyzed, are in substantial harmony with the doctrine outlined in the Restatement, although language used in some of the opinions seems to have been on a somewhat broader basis. However, in Petermann v. Gary, 210 Miss. 438, 49 So. 2d 828, the Court clarified the situation. A judgment for plaintiff was affirmed. Plaintiff was injured in a wreck caused by the negligence of one Foster in the operation of a truck, while he was under the influence

of intoxicating liquor, said truck being the property of his employers, Petermann Brothers. He had been employed by this firm for three or four years. Appellants furnished the truck to Foster; he kept it in his possession while on duty and while off duty; and he was using it on the night of the accident for his own purposes. The record showed "that he used the truck, with Petermann Brothers' knowledge, for his own personal uses, while he was off duty, and was regularly seen driving the truck about town at night and on Sundays." The plaintiff's theory of liability was that "Petermann Brothers were guilty of negligence, which directly and proximately contributed to the accident because, on the occasion complained of, they permitted Foster to use, operate and drive their truck at a time when they knew, or by the exercise of reasonable care should have known, that Foster was a person who habitually and customarily drank intoxicating liquors, and when under the influence of intoxicating liquors was a reckless and incompetent driver, and that he was likely to drive the truck while under the influence of intoxicating liquors and to cause injury and bodily harm to other persons using the highway." The Court stated that the "broad principle upon which this liability is founded has been tersely and accurately stated as follows," and again quoted the Restatement. The Court then stated: ". . . This Court must therefore determine whether there was sufficient evidence from which the jury could have found: (1) that Walter Foster at the time of the accident was under the influence of intoxicating liquor, and that the fact that he was under the influence of intoxicating liquor constituted a contributing proximate cause of the accident; (2) that the defendants Petermann Brothers furnished the truck to Foster and permitted him to use the same when they knew, or from facts known to them should have known that he was an excessive user of intoxicating liquors, that he was an incompetent driver when under the influence of intoxicating liquor, and that he was likely

to drive the truck while under the influence of intoxicating liquor.''

On the second proposition to be proved the Court had this to say: ''We also think that there was sufficient evidence to warrant the jury in finding that Petermann Brothers knew, or from facts known to them should have known, that Foster was a person who habitually drank intoxicating liquors, and that at times he drank intoxicating liquors to excess, and that he was a person who was likely to be under the influence of intoxicating liquor while driving the welding truck. Foster admitted that he was an occasional drinker of intoxicating liquor, and that he sometimes drank to excess, and that on several occasions he had drunk intoxicating liquors when his employer was present. The record shows that Foster frequently visited the cafes in Yazoo City at night and drank beer in the cafes, and that his welding truck was usually parked in front of the cafe while he was in the cafe. Foster had been arrested during the preceding February for being drunk on the street in Yazoo City and had spent the night in jail. And it appears from the testimony that on the Sunday next preceding the date of the wreck Foster had been drinking heavily during the forenoon while working on a job for Petermann Brothers, and that Mr. Hub Petermann carried him to town to buy him a dinner to help get him back into a condition to work.''

The most recent decision in the line of cases applying the doctrine under consideration is found in Dixie Drive It Yourself System v. Matthews, 212 Miss. 190, 54 So. 2d 263. A judgment for plaintiff was affirmed. Appellant, in the business of renting automobiles, supplied a car to one J. A. Shivers. About five hours later Shivers, in operating the car, negligently injured the plaintiff. Appellants had previously rented cars to Shivers on many occasions, and claimed that there was no complaint as to his fitness as a driver. The theory of plaintiff was that appellant ''. . . was negligent in that when it

rented the automobile to Shivers it knew, or should have known, that Shivers was a reckless and unsafe driver, or knew that Shivers was under the influence of intoxicating liquor, or knew or should have known that Shivers was a reckless and unsafe driver and habitually drove an automobile while under the influence of intoxicating liquor, and that such negligence of the appellant was the proximate cause of appellee's loss. . ." The case was submitted to the jury on the ground ". . . that the appellant was negligent in that it knew or should have known that Shivers was under the influence of intoxicating liquor when it rented the car to him and was likely to drive the car on the public highways while under the influence of intoxicating liquor, resulting proximately in damage to another, and that such negligence was the proximate cause of appellee's loss. . ." The opinion enumerates many facts in the record supporting plaintiff's claim, on the narrow issue submitted to the jury (212 Miss. pp. 202-203). The Court then concluded: "After a careful review of the testimony both for appellee and appellant, we are of the opinion that it presented an issue of fact for the jury to determine whether or not when appellant rented the car in question to Shivers the appellant knew or should have known in the exercise of reasonable care that Shivers was under the influence of liquor and likely to operate the car on the public highways while under the influence of liquor, and whether or not his operation of the car while under the influence of liquor was the proximate cause of the damage inflicted upon the appellee."

All of the cases which have been discussed herein have upheld liability. There are two decisions where liability was denied, which serve to throw light upon the Mississippi doctrine. In Vanner v. Dalton, 172 Miss. 183, 159 So. 558, the claim of liability was planted upon the alleged fact that the operator of the car was a reckless driver, in the absence of the element of drinking or drunkenness, as the cause of recklessness. But there is no dif-

ference in principle. A judgment for plaintiff was reversed. Plaintiff's mule was damaged by the negligence of one Robert Plains in operating appellant's automobile. The case was submitted to the jury on the theory that "if the jury believed that Plains was an habitually reckless driver, and that this fact was known to the appellant, and that he was driving the automobile with her permission, they should find for the appellee." Appellant's claim to a directed verdict was based on the ground that "there is no evidence either that Plains was a reckless driver or that, if he was, the fact was known to the appellant." The only evidence that Plains was a reckless driver was that of two witnesses to the effect that he had the reputation of being a wild driver, and that he had a bad reputation as a reckless driver. In reversing the case the Court said:

"Two questions, among others, here arise: Is this evidence sufficient proof (1) that Plains was in fact a reckless driver; and (2) that that fact was known, or should have been known, to the appellant.

"Whether Plains was a reckless driver is not a fact collateral to the issue, as, for instance, a witness' reputation for truth and veracity, but is one of the issues made by the appellee's statement of his cause of action, assuming for the purpose of the argument that his statement thereof is sufficient therefor; and the appellee must here prove, first, that Plains was in fact a reckless driver, and, second, that that fact was known, or should have been known, to the appellant. The authorities all hold that, where one is responsible for the negligence of another, only when such other is incompetent for the doing of the act out of which the negligence grew, and his incompetency was known to the one sought to be charged with the negligence, after incompetency has been proved the knowledge thereof is provable by reputation for incompetency. But they seem to be divided as to whether the fact of incompetency is provable by reputation there-

for. In 3 Labatt's Master & Servant (2 Ed.), section 1094, it is said that: 'In some cases it has been argued that the servant's reputation for incompetency is evidence that he was actually incompetent, and not simply a circumstance which put the master upon inquiry as to whether he was or was not competent. But this contention has always been rejected.' According to Mr. Wigmore, evidence of reputation for incompetency is relevant to the fact of incompetency itself. 1 Wigmore on Evidence (2 Ed.), sections 80 and 1622. See, also, 39 C. J. 1036; 10 R.C.L. 961 and note to McQuiggan v. Ladd, 14 L.R.A. (N.S.) at page 760.

"The question seems not to have been decided by this court (cf. Anderson v. Daniel, 136 Miss. 456, 101 So. 498; Herrmann v. Maley, 159 Miss. 538, 132 So. 541, 542; Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318), and it will not be necessary for us to decide it here, for the reason that reputation of incompetency, if relevant to the fact of incompetency, is of itself alone 'inconclusive, and needs to be reinforced.' Wigmore, op. cit., sec. 208. There is no evidence here whatever to reinforce that of reputation. The judgment of the court below will be reversed and judgment will be rendered here for the appellant.''

The case was decided on the insufficiency of reputation alone to prove the fact of being a reckless driver. The comment that knowledge of incompetency may be proved by reputation is a mere dictum.

The other case is Gooch v. Dillard, 187 Miss. 660, 193 So. 619. A judgment for the plaintiff was reversed. Appellee suffered personal injury and property damage as a result of the negligent driving of an automobile by one E. N. Brasshear while drunk. Appellant Gooch was sued on the ground that he furnished the car to Brasshear "when he knew or ought to have known that E. N. Brasshear was liable to be drunk while driving it." When Brasshear had applied to appellant for employment a

short time before the accident, he referred appellant to several persons as to his habits, and they "advised the appellant that Brasshear did not drink intoxicating liquor while at work, but occasionally did while not at work, but nothing in this information indicated that he was accustomed at any time to become intoxicated." In reversing the case, the Court said: "The appellant did not know that Brasshear was liable to be drunk while driving the automobile and the fact that he knew he occasionally drank intoxicating liquor was insufficient to charge him with constructive knowledge of the fact that he was liable to be drunk while driving an automobile."

This opinion has expanded into entirely too great length. Therefore, without extended comment beyond what is contained in our discussion of the several Mississippi cases which have been reviewed, we proceed to state our conclusions on this phase of the case.

The peremptory instruction should have been granted for the following reasons:

1.   In the first place, it was not shown that the car was entrusted to Palmer, the employee, for use on the Sunday on which the accident occurred. He had permission of Lovett to take the car to his home on Saturday evening, there to be kept until the following Monday morning; but he had no right or permission to use it for personal purposes over the weekend. His employer had no knowledge that he had ever so used it on other occasions. There was no proof that Palmer's use of the car, contrary to instructions and authority, was due to any drinking by Palmer.

2.   It was not shown that Palmer was in fact a reckless or incompetent driver; nor one who was an excessive drinker of intoxicating liquor or a habitual drunkard; nor one who had ever been known to drive a car while under the influence of intoxicating liquor, or while drinking. The most that can be said of the proof along this line is that it was that he would occasionally take a drink,

though not during working hours, and that two witnesses said that his reputation for drinking was bad. This evidence falls far short of that required by our cases.

3. Even if it had been proved as a fact that Palmer was a reckless and dangerous driver because of drinking habits, it was not sufficiently shown that Lovett knew this fact, or was reasonably chargeable with knowledge thereof, so that it would be negligence for him to permit Palmer to use his car. The only fact known to him was that Palmer would occasionally drink, though not during working hours. Even if he was chargeable with knowledge of reputation testified to by two witnesses, but contradicted by two others, as to which we need express no opinion, he was not thereby put on notice that Palmer had a bad reputation as a reckless or incompetent driver, or as a habitual drunkard, or as one who would drive while drinking, but merely that he had a bad reputation for drinking. This was not sufficient to make it negligence for Lovett to lend his car to Palmer, absent other facts or circumstances putting him on notice that Palmer was not a safe person to use a car.

Appellee has prosecuted a cross-appeal complaining that the jury's award of damages is inadequate. No assignment of error based upon this ground has been filed in this Court, and appellee filed no motion for a new trial in the court below upon the ground of the inadequacy of the damages awarded. In the absence of a motion for a new trial based upon this ground and filed in the trial court, the court below was afforded no opportunity to pass upon this question, and the objection to the amount of the verdict is, therefore, not available to appellee on appeal. Coccora v. Vicksburg Light and Traction Co., 126 Miss. 713, 89 So. 257; Tendall v. Davis, 129 Miss. 30, 91 So. 701.

It follows from what has been said that the judgment of the court below should be and it is affirmed on the direct appeal of Bodie D. Palmer and on cross-appeal, and

should be and it is reversed and judgment rendered on the direct appeal of all appellants other than Bodie D. Palmer.

Affirmed in part on direct appeal; affirmed on cross-appeal; and reversed in part on direct appeal and judgment rendered.

*McGehee, C. J.,* and *Roberds, Kyle,* and *Ethridge, JJ.,* concur.

*Hall, Lee, Holmes,* and *Arrington, JJ.,* dissenting.

Holmes, J., Dissenting:

I am unable to bring myself in accord with the majority opinion in so far as it holds that the evidence was insufficient to create an issue of fact for the jury on the question as to whether or not the appellants, Lovett Motor Company, when entrusting the automobile to their employee, Bodie D. Palmer, knew, or from facts known to them should have known, that Palmer was an incompetent driver because of his habits of drink, and was likely to drive the automobile while under the influence of intoxicating liquor to the injury of others, and in so far as it holds that the appellants, Lovett Motor Company, were entitled to a peremptory instruction on this issue.

It is conceded in the majority opinion that it must be accepted as true on this appeal that Palmer was driving the automobile on the occasion in question while under the influence of intoxicating liquor, and thereby caused appellee's injuries, since the jury found this to be a fact on conflicting evidence. The majority opinion, however, refuses to give this same effect to the finding of the jury favorable to the plaintiff on conflicting evidence on the issue as to whether the Lovett Motor Company, when entrusting the automobile to Palmer, knew, or from facts known to them should have known, that Palmer was an incompetent driver because of his habits of drink.

However, it has long been the settled rule in Mississippi that in determining the right of a party to a requested peremptory instruction, the court is required to take as true the evidence, and all inferences reasonably deducible therefrom, favorable to the party against whom the peremptory instruction is requested. Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613; Bankston v. Dumont, 205 Miss. 272, 38 So. 2d 721; Louisville & N. R. Co. v. Whisenant, 58 So. 2d 908.

In Graves, et al. v. Johnson, et al., 179 Miss. 465, 176 So. 256, the Court announced the rule as follows: "But the established rule in this state is that, when looking solely to the testimony in behalf of the party against whom the peremptory charge is requested, and taking that testimony as true, there is enough of facts testified to, along with the reasonable inferences which could be drawn therefrom in favor of said party, to support a verdict for him, the peremptory charge is not allowable."

Again in the case of Rhodes v. Fullilove, 161 Miss. 41, 134 So. 841, the Court said: "To entitle a plaintiff to a directed verdict, the evidence must be such that no other reasonable inference can be drawn therefrom except liability on the part of the defendant."

The evidence thus to be taken as true is that the appellant, Arthur K. Lovett, who was in full charge and control of the business of the Lovett Motor Company, entrusted the automobile to Palmer, with authority to drive it during business hours, and, in the event he should not return it to the place of business before closing hours, to take it to his home and keep it over night or over the weekend and return it to the place of business at the next opening hours; that the automobile was thus available to Palmer on occasions over night or over the weekends, if he should choose to use it, without regard to orders; that when Lovett so entrusted the automobile to Palmer, he knew that he drank intoxicating liquor occasionally because he had taken a drink with him; that Lovett testified

on cross-examination: "Q. You had knowledge that on occasions that he (referring to Palmer) drank, didn't you? A. Yes, sir. Q. That is right, and that was after he got in your employment, wasn't it? A. Yes, sir. Q. And after he got in your employment, with that knowledge, you continued to let him have and drive your automobile, didn't you? A. Yes, sir;'' that Lovett and Palmer lived in the same community and that Palmer's general reputation in that community for drinking intoxicating liquor was bad; that on the occasion of the collision, Palmer was drunk and driving the automobile on the wrong side of the road, and thus caused appellee's injuries.

The reasonable inference which the jury was warranted in deducing from the testimony that Palmer's general reputation for drinking intoxicating liquor was bad in the same community in which he and Lovett lived, was that Lovett knew, or with reasonable care should have known, that Palmer was an incompetent driver because of his habits of drink. The test, in considering the request for the peremptory, is not whether there is evidence of the owner's actual knowledge of the incompetency of the driver in such cases, but whether the evidence taken as true, and all reasonable inferences deducible therefrom, would warrant the jury in finding that the owner knew, or from facts known to him should have known, that the driver was incompetent because of his habits of drink. This is the test announced in all of the authorities reviewed in the majority opinion, beginning with Anderson v. Daniel, 136 Miss. 456, 101 So. 498, and reaffirmed in Herrman v. Maley, 159 Miss. 538, 132 So. 542; Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318; Levy v. McMullen, 169 Miss. 659, 152 So. 899; Richton Tie and Timber Co. v. Smith, 210 Miss. 148, 48 So. 2d 618; Petermann v. Gary, 210 Miss. 438, 49 So. 2d 828; Dixie Drive It Yourself System v. Matthews, 212 Miss. 190, 54 So. 2d 263.

In Anderson v. Daniel, supra, the Court said: "It is true that no witness testified that appellant knew that at the time of the injury his son was operating the car. Nor did any witness testify that appellant knew that his son was a reckless driver. But appellee's evidence by several witnesses was to the effect that appellant's son constituted one of appellant's household, that he was often seen by the neighbors driving appellant's car, and that he was not only a reckless driver but had that reputation in the neighborhood where appellant resided and where the injury complained of occurred. This evidence in our opinion was sufficient to go to the jury on the question whether appellant knew that his son was in the habit of driving his car, and also on the question whether appellant knew that his son was a reckless driver."

It is true that in many of the cases cited, there were facts other than reputation bringing knowledge of incompetency to the owner. But in Anderson v. Daniel, supra, Herrman v. Maley, supra, Slaughter v. Holsomback, supra, Levy v. McMullen, supra, and Richton Tie and Timber Co. v. Smith, supra, reputation for incompetency because of habits of drink or otherwise was deemed and held to be an important circumstance for the consideration of the jury in determining whether the owner knew, or from facts known to him should have known, that the driver was incompetent. In the case of Richton Tie and Timber Co. v. Smith, supra, the undisputed evidence was that the driver was a reckless, incompetent driver because of his habits of drink, but the only evidence to prove the owner's knowledge of such incompetency was proof of the general reputation of the driver for incompetency, and the Court approved the submission to the jury of the issue as to whether or not the owner knew or should have known of such incompetency.

In Vanner v. Dalton, 172 Miss. 183, 159 So. 558, cited in the majority opinion, the Court held that knowledge of incompetency is provable by reputation for incompe-

tency, but denied recovery because there was no proof of incompetency. That case is easily distinguishable from the case under review, since the proof here taken as true shows Palmer's reputation for drinking intoxicating liquor was bad and that he was driving the automobile while drunk. In Slaughter v. Holsomback, supra, the Court said: "We unhesitatingly and unreservedly declare that a person who has the general reputation of being an habitual drunkard is an incompetent driver, and that one who knows, or should know, facts that lead to the belief that one is an habitual drunkard, should know that such person is just as unsafe a driver as an imbecile or a baby." It might also be said that one whose reputation for drinking intoxicating liquor is bad is an incompetent driver, even though his reputation be not that of an habitual drunkard because it is not the degree of drunkenness but the fact that such a person is likely to become under the influence of liquor that renders him a dangerous and incompetent driver. Our legislature recognized this when it enacted Sec. 8174 of the Code of 1942, making it unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within the state.

The danger of committing an automobile to one whose reputation for drinking intoxicating liquor is bad lies in the likelihood, as was said in the case of Levy v. McMullen, supra, "that such a man, according to common knowledge, when under the influence of liquor will drive about in an automobile if one is available to him without regard to orders." In the case of Levy v. McMullen, supra, the only evidence relied upon to bring knowledge to the owner was the bad reputation of the driver and the fact that the owner knew that the driver "was occasionally a drinking man." There was other evidence of the drinking habits of the driver but not shown to the actual knowledge of the owners. The Court said: "His employers had sufficient actual knowledge to put them upon

inquiry which, if reasonably pursued, would have led to full knowledge."

The case of Gooch v. Dillard, 187 Miss. 660, 193 So. 619, has no application here. In that case, when the prospective employee, Brasshear, applied to the prospective employer, Gooch, for work, he referred Gooch to several persons as to his habits, who advised Gooch that Brasshear did not drink intoxicating liquor while at work but occasionally would while not at work, "but nothing in this information indicated that he was accustomed at any time to become intoxicated." In other words, the affirmative information which the employer had was that Brasshear did not drink while at work. There was no evidence of bad reputation, but only the positive and undisputed evidence that he would not drink while at work, and hence the court rightly held that the evidence was insufficient to charge the employer with constructive knowledge that the employee was liable to drink while driving an automobile.

In the case at bar, it is to be taken as true, on the consideration of the question of the right of the appellants, Lovett Motor Company, to a peremptory instruction, that Palmer was a drunken driver and, therefore, an incompetent driver, and that his drunken driving caused appellee's injuries; that the employers knew that when they entrusted the automobile to him he occasionally drank intoxicating liquor; that Palmer's reputation for drinking intoxicating liquor was bad in the community in which he and his employers lived. Can it be said on these admitted facts that the jury would not be warranted in reasonably deducing from these facts that the employers knew, or in the exercise of reasonable care should have known, that Palmer was an incompetent driver because of his habits of drink, and was likely to drive the automobile while under the influence of liquor to the injury of others? I think not. To answer the question in the affirmative would be to do violence to the

principles enunciated in the previous decisions of this Court, and would violate the well recognized rule announced in Rhodes v. Fullilove, supra, "that to entitle the plaintiff to a directed verdict, the evidence must be such that no other reasonable inference could be drawn therefrom except liability on the part of the defendant."

Drunken driving is the greatest menace to life and property on our highways today, and those who entrust an automobile to another when they know, or from facts known to them should know, that such other is an incompetent driver because of his habits of drink and is likely to drive the automobile while under the influence of liquor to the injury of others, should be held to accountability. Under our prior decisions, proof of actual knowledge on the part of an employer who so entrusts an automobile to another is not required if all of the facts and circumstances when assumed to be true, and the reasonable inferences deducible therefrom, are such as to warrant a jury in finding that the employer knew, or with reasonable care should have known, of the driver's incompetency because of his habits of drink. From the evidence of Palmer's general bad reputation in the community in which he and Lovett lived, it is difficult to conceive how any reasonable inference could be deduced from such evidence other than that Lovett knew of such reputation. I think, therefore, that the trial court was correct in denying the peremptory instruction on this issue.

If the majority opinion is to remain the law in this state, there will be few cases where the owner has entrusted his automobile to another in which recovery for injuries resulting from drunken driving will be warranted.

I am authorized to say that Justices *Hall, Lee,* and *Arrington* join in this dissent.